447 A.2d 267
COMMONWEALTH of Pennsylvania
v.
George VUKOVICH, Appellant.
Superior Court of Pennsylvania.
Argued April 12, 1979.
Filed June 18, 1982.

112

T. Bowner, Assistant Public Defender, Mercer, for appellant.

Frances S. Palmer, Assistant District Attorney, Sharon, for Commonwealth, appellee.

Before CERCONE, President Judge, and WIEAND and HOFFMAN, JJ.

WIEAND, Judge:

George Vukovich was tried jointly with his brother, John, and was convicted of forgery,[1] conspiracy to commit forgery,[2] and conspiracy to use a forged prescription in violation of Section 8 of the Pharmacy Act of September 27, 1961, P.L. 1700, 63 P.S. § 390–8.[3] Post-trial motions were denied, and sentences of imprisonment were imposed for forgery and conspiracy to commit forgery. On the conviction for conspiracy to violate the Pharmacy Act, sentence was suspended. This appeal followed.

1. 18 Pa.C.S. § 4101.

2. 18 Pa.C.S. §§ 901, 4101.

3. Vukovich was found not guilty of *using* a forged prescription in violation of the Pharmacy Act.

The Commonwealth's evidence, as recited in the trial court's opinion, disclosed the following: "On November 5, 1977, in a Thrift Drug Store in the City of Sharon, Pennsylvania, John Vukovich presented a written prescription, purportedly from Dr. Wieneke for Percodan, in the name of George Wilcox . . . . This was a fictitious name. The doctor testified at trial that none of the writing on the prescription blank was his and that the prescription was a forgery . . . . Commonwealth witnesses testified that both John Vukovich and George Vukovich were present in the drugstore at the time in question and that the prescription was presented to the pharmacist's clerk by John Vukovich.

"By circumstance, Robert K. Torrence, a police officer of the City of Sharon, presently assigned to the Mercer County Narcotics Unit, came to Thrift Drug shortly before the attempt to pass the forged prescription. He informed a store employee that he would be next door in the event that anything occurred . . . [having been] assigned to assist the drugstores in their efforts to prevent the filling of forged prescriptions. After the drugstore personnel became suspicious of the prescription passed by John Vukovich, the pharmacist had one of the employees go to the sporting goods store next door and request Officer Torrence to come to the pharmacy immediately.

"John Vukovich apparently became suspicious of the delay and proceeded out of the store without waiting for his prescription to be filled. He met Officer Torrence, who knew him, just outside the door of the drugstore . . . .

"When the officer then entered the drugstore, George Vukovich arose from where he was seated and started out. Torrence stopped him initially but was informed by the druggist that he had the wrong man. At that point the druggist was not aware of the relationship of the two defendants."

George Vukovich, the appellant herein, was subsequently arrested and charged by the District Attorney of Mercer County with forgery in that he "did attempt to procure Percodan, a Schedule II narcotic drug, on a prescription

blank belonging to Dr. K. F. Wieneke, not issued or authorized by Dr. K. F. Wieneke, in violation of 18 P.S. 4101." Appellant was also charged with being part of a conspiracy with John Vukovich, appellant's brother, to commit forgery. At trial, appellant's counsel contended that the statutory citation in the information was erroneous and that the offense alleged was a violation of the Pharmacy Act of September 27, 1961, P.L. 1700, Section 8, 63 P.S. § 390–8. He requested that the court instruct the jury according to the provisions of that Act. The trial judge thereupon instructed the jury on both forgery as defined by the Crimes Code and the crime of using a forged prescription under the Pharmacy Act. He also instructed the jury to return separate verdicts on such charges. The jury found appellant not guilty of forging or altering a prescription under the Pharmacy Act but guilty of forgery under the Crimes Code. Appellant was also found guilty of conspiring to violate both Section 4101 of the Crimes Code and Section 8 of the Pharmacy Act. Appellant contends on appeal that the Pharmacy Act is controlling and that he cannot be convicted under Section 4101 of the Crimes Code. We agree.

This issue was properly raised at trial and has been preserved in post-verdict proceedings. The information, although citing Section 4101 of the Crimes Code, alleged facts which equally constituted a violation of the Pharmacy Act.[4]

4. The information charged appellant with forgery in the following language:
"... on or about November 5, 1977 at Thrift Drug Store, Towne Plaza, Sharon, Pennsylvania, with intent to defraud or injure anyone, or with knowledge that he was facilitating a fraud or injury to be pertetrated [sic] by anyone, the defendant did make, complete, execute, authenticate, issue or transfer a writing so that it purports to be the act of another who did not authorize that act, in that he did attempt to procure Percodan, a Schedule II narcotic drug, on a prescription blank belonging to Dr. K. F. Wieneke, not issued or authorized by Dr. K. F. Wieneke, in violation of 18 P.S. § 4101 ...."
The information also charged appellant with conspiracy as follows:
"... on or about November 5, 1977 with the intent of promoting or facilitating the commission of the crime of forgery, defendant did unlawfully and feloniously agree with John Vukovich or others, that they or one or more of them would engage in conduct which

Instead of moving pre-trial to quash the information, defense counsel raised the issue of the applicable statutory proscription at trial. He requested the trial judge to charge the jury according to the provisions of Section 8 of the Pharmacy Act. Over objection, the trial judge submitted it to the jury to determine whether appellant had committed one or both forgery offenses. The incorrectness of the court's instructions was asserted specifically in post-trial motions and was, in fact, considered by the trial court in disposing of such post-trial motions. The Commonwealth does not question that this issue is properly before us for review.

Forgery is defined in Section 4101(a) of the Crimes Code [18 Pa.C.S. § 4101(a)] in pertinent part as follows:

"A person is guilty of forgery if, with intent to defraud or injure anyone . . . the actor:

(1) alters any writing of another without his authority;

(2) makes, completes, executes, authenticates, issues or transfers any writing so that it purports to be the act of another who did not authorize that act . . . ; or

(3) utters any writing which he knows to be forged in a manner specified in paragraphs (1) or (2) of this subsection."

The Pharmacy Act, supra, makes the use of a forged prescription to obtain controlled substances a misdemeanor in the following language:

"It shall be unlawful for:

. . . .

(13) Any person by himself or through another to procure or attempt to procure for himself or another any drug:

. . . .

would constitute the crime aforesaid, or an attempt or solicitation to commit such crime, and did an overt act in pursuance thereof, in violation of 18 P.S. § 903 . . . ."

(ii) by the forgery or alteration of a prescription or any written order."[5]

■ It is the policy of the law not to permit prosecutions under the general provisions of a penal code when there are applicable special penal provisions available. *Commonwealth v. Brown*, 346 Pa. 192, 199, 29 A.2d 793, 796–97 (1943). Thus, in *Commonwealth v. Buzak*, 197 Pa.Super. 514, 179 A.2d 248 (1962), it was held that a person who knowingly made a false representation in order to obtain compensation under the Unemployment Compensation Law had to be prosecuted under the section of that law which made his act a summary offense[6] and could not be indicted for the felony of false pretenses under the Penal Code of 1939.[7] *See also Commonwealth v. Litman*, 187 Pa.Super. 537, 144 A.2d 592 (1958).

■ In the instant case, the evidence showed that appellant had presented a forged prescription for the purpose of obtaining drugs which he could not purchase without a prescription. This was precisely the conduct made a misdemeanor by the Pharmacy Act; and it was this statute about which the jury should have been instructed. The forgery section of the Crimes Code is a general penal provision, which must yield to the special penal provision in the Pharmacy Act.[8]

5. It may be observed, although appellant has not raised it in the instant case, that the Controlled Substance, Drug, Device and Cosmetic Act of April 14, 1972, P.L. 233, No. 64, § 13(a)(12) as amended, 35 P.S. § 780–113(a)(12) also makes criminal and grades as a misdemeanor "[t]he acquisition or obtaining of possession of a controlled substance by misrepresentation, fraud, forgery, deception or subterfuge."

6. Act of March 30, 1955, P.L. 6, No. 5, § 7, 43 P.S. § 871, amending the Unemployment Compensation Law.

7. Penal Code of June 24, 1939, P.L. 872, § 836, 18 P.S. § 4836, now repealed.

8. We do not now decide whether the intent to obtain drugs attainable only by prescription, even though payment therefor is made, constitutes an "intent to defraud or injure anyone" as required by Section 4101(a) of the Crimes Code.

For this reason, we are constrained to hold that the instructions of the trial court were erroneous and to set aside the convictions for forgery and conspiracy to commit forgery under the Crimes Code. With respect to the instructions concerning conspiracy to obtain drugs by use of a forged prescription in violation of the Pharmacy Act, we observe that the information was sufficient to charge such an offense. The facts averred therein clearly designated appellant's conduct as being the type of conduct made criminal by the Pharmacy Act. Moreover, at trial, appellant not only consented to the jury's being instructed under the Pharmacy Act, but actually requested the trial court to so charge.

Appellant argues, however, that he is entitled to a new trial on the charge of conspiracy to violate the Pharmacy Act because of alleged trial errors. He contends, inter alia, that it was error to allow Officer Torrence to testify, over objection, that appellant and his brother had been seen together in another drugstore two days before the events which produced their arrest on the present charges. When Torrence made his presence known on that occasion, John said to appellant, "Let's get the hell out of here." Both men thereupon left the drugstore.

"Generally, it may be said that any legally competent evidence which, when taken alone or in connection with other evidence, tends to prove or disprove a material or controlling issue or to defeat the rights asserted by one or the other parties, and sheds any light upon or touches the issues in such a way as to enable the jury to draw a logical and reasonable inference with respect to the matter or principal fact in issue, is relevant. As thus defined, relevancy means the logical relation between the proposed evidence and a fact to be established." 29 Am.Jur.2d 302, 303, Evidence § 252.

The presence of John Vukovich in the Thrift Drug Store on November 5, 1977, was an issue in the instant case. Similarly, whether appellant and John were co-conspirators acting in concert to obtain drugs was an issue. The Com-

monwealth contended that John had been present and had tendered a forged prescription while George waited. John was seen outside the drugstore by Officer Torrence, who also had a conversation with him. Both John Vukovich and his brother, George, denied that John had been in the drugstore or had attempted to use a forged prescription to obtain drugs. George, who was present in the drugstore, testified that he arrived alone for the purpose of purchasing Betadine swabs.

The fact that Officer Torrence had observed appellant and his brother two days earlier in a drugstore was relevant to show that they were not total strangers to him, thus lending credence to Torrence's testimony that it was John Vukovich whom he had observed at the door of Thrift Drugs on November 5, 1977.

There was no relevance, however, to John's statement, "Let's get the hell out of here" when he became aware of the presence of Officer Torrence.[9] This statement did not tend to prove or disprove any material issue in the case. Neither was the admission of this statement harmless. The irrelevant conclusion to be drawn from the statement was that appellant and his brother did not wish to remain in the drugstore in the presence of a policeman. This could only serve to prejudice the appellant without serving any valid evidentiary purpose. Thus, it was not only irrelevant but unfairly prejudicial as well; and it was error to receive the same.[10] Accordingly, a new trial must be granted on the charge of conspiracy to violate the Pharmacy Act by using a forged prescription to obtain drugs.

9. This issue has not been waived. Defense counsel's objection was a general objection. Subsequent argument on the objection was premised, inter alia, on the grounds that the testimony was prejudicial and had no probative value. This was sufficient to preserve the issue of relevancy for post-trial review. In fact, it was fully considered in the trial court's opinion denying post-trial motions.

10. Because of our decision that a new trial must be granted for this reason, we find it unnecessary to consider appellant's additional contention that it was error to allow Dr. Wieneke to testify that upon examination of appellant one month before arrest he observed needle marks up and down the major veins in appellant's arms and neck.

120

Reversed and remanded for a new trial in accordance with the foregoing opinion.

CERCONE, President Judge, concurs in the result.