592 A.2d 720

Philip COHEN, Executor of the Estate
of Sara Cohen, Deceased, Appellee,

v.

ALBERT EINSTEIN MEDICAL CENTER,
NORTHERN DIVISION, Appellant.

Superior Court of Pennsylvania.

Argued Jan. 8, 1991.

Filed June 11, 1991.

David J. Griffith, Philadelphia, for appellant.

Alan M. Feldman, Philadelphia, for appellee.

Before WIEAND, MONTEMURO and HESTER, JJ.

WIEAND, Judge:

Sara Cohen filed a medical malpractice action against Albert Einstein Medical Center, Northern Division (Einstein) to recover damages for an injury to her left arm and hand allegedly caused by an improper intramuscular injection administered by a nurse employee of the hospital. The jury awarded damages to Cohen in the amount of one million, three hundred thousand ($1,300,000.00) dollars. The trial court granted a remittitur to five hundred thousand ($500,000.00) dollars, but denied any further post-trial relief. Cohen accepted the court ordered remittitur, and judgment was entered accordingly. Einstein appealed.

Sara Cohen was hospitalized at Einstein from August 9, 1982 to October 1, 1982 for the treatment of intractable arthritis pain in her right hip and lower back. Her physician prescribed Demerol and Vistaril by intramuscular injection to alleviate pain. Cohen testified that on the second or third day of her hospitalization (i.e. August 10 or 11), an unidentified nurse administered an injection into her left, upper arm. As the injection was being given, Cohen asserted, she felt a shock run down her arm and into her hand and fingers. Thereafter her left hand dropped uselessly at the wrist. Cohen did not report to anyone the sudden pain and disability, and the hospital records do not contain any reference to the injection. On August 17, 1982, one of her physicians recorded for the first time his observation of a left wrist drop "of unknown etiology." Subsequent nerve conduction tests disclosed a defect in the radial nerve above the elbow.

Cohen's wrist drop persisted despite her doctor's assurances that a nerve injury secondary to an injection would most likely be transitory. She required a wrist splint to

maintain the hand in a proper anatomical position, and this made it difficult for her to ambulate with her walker. In September, 1986, four years after the alleged injection, Dr. James Hunter, a hand-arm surgeon, observed scarring of Ms. Cohen's radial nerve in the upper left arm during surgery to relieve her persistent pain and disability. He recommended additional surgery. However, Ms. Cohen died on July 30, 1989, following trial, of causes unrelated to the instant complaint.[1]

In reviewing the sufficiency of the evidence to support the verdict, we view the evidence in the light most favorable to the verdict winner, granting that party the benefit of all reasonable inferences. *Cooper v. Burns,* 376 Pa.Super. 276, 280–281, 545 A.2d 935, 937 (1988), *allocatur denied,* 522 Pa. 619, 563 A.2d 888 (1989). See also: *Atkins v. Urban Redevelopment Authority of Pittsburgh,* 489 Pa. 344, 351, 414 A.2d 100, 103 (1980); *Reichman v. Wallach,* 306 Pa.Super. 177, 184–185, 452 A.2d 501, 505 (1982).

In order to establish liability on the part of the hospital, the plaintiff was required to establish by competent evidence that the alleged injection was given in a manner which was negligent and that the injection was a legal cause of the injury. See: *Mitzelfelt v. Kamrin,* 526 Pa. 54, 63–64, 584 A.2d 888, 891 (1990); *Brannan v. Lankenau Hospital,* 490 Pa. 588, 595, 417 A.2d 196, 199 (1980); *Lira v. Albert Einstein Medical Center,* 384 Pa.Super. 503, 559 A.2d 550, 552 (1989). In this medical malpractice action where the events and circumstances were beyond the knowledge of the average lay person, it was necessary that plaintiff present expert testimony to establish her cause of action. *Brannan v. Lankenau Hospital, supra; Chandler v. Cook,* 438 Pa. 447, 265 A.2d 794 (1970); *Smith v. Lohe,* 412 Pa. 94, 194 A.2d 167 (1963); *Bowser v. Lee Hospital,* 399 Pa.Super. 332, 340, 582 A.2d 369, 373 (1990); *Ragan v. Steen,* 229 Pa.Super. 515, 331 A.2d 724 (1974).

1. The action has been pursued by Philip Cohen, plaintiff's brother and the executor of her estate.

■ To establish negligence in the administration of an intramuscular injection, the plaintiff relied upon the testimony of Sandra Green, R.N., who said that, to a reasonable degree of certainty, "[i]f proper technique is used, you should not hit the radial nerve." This testimony, although not specific, was sufficient, together with Cohen's testimony, to require the issue of negligence to be submitted to the jury. From such evidence, the jury could infer that an injection which caused an immediate wrist drop had been negligently given.

■ To establish that the wrist drop had been legally caused by an injection, plaintiff offered the testimony of James Hunter, M.D., and Richard Kaplan, M.D. Appellant contends that Dr. Hunter failed to render his opinion with a sufficient degree of medical certainty.

The degree of medical certainty necessary to prove causation was reviewed by the Superior Court in *Kravinsky v. Glover*, 263 Pa.Super. 8, 396 A.2d 1349 (1979). The Court in *Kravinsky* said:

When a party must prove causation through expert testimony the expert must testify with "reasonable certainty" that "in his 'professional opinion, the result in question did come from the cause alleged.'" *McCrosson v. Philadelphia Rapid Transit Co.*, 283 Pa. 492, 496, 129 A. 568, 569 (1925). See *Hamil v. Bashline* [481 Pa. 256, 392 A.2d 1280], *supra*. An expert fails this standard of certainty if he testifies "'that the alleged cause "possibly", or "could have" led to the result, that it "could very properly account" for the result, or even that it was "very highly probable" that it caused the result.' *Niggel v. Sears, Roebuck & Co.*, 219 Pa.Super. 353, 354, 355, 281 A.2d 718, 719 (1971); *Menarde v. Philadelphia Trans. Co.*, 376 Pa. 497, 103 A.2d 681 (1954); *Vorbnoff v. Mesta Machine Co.*, 286 Pa. 199, 133 A. 256 (1926); *Moyer v. Ford Motor Co.*, 205 Pa.Super. 384, 209 A.2d 43 (1965)." *Albert v. Alter*, 252 Pa.Super. 203, 225, 381 A.2d 459, 470 (1977).

"The issue is not merely one of semantics. There is a logical reason for the rule. The opinion of a[n] ... expert is evidence. If the fact finder chooses to believe it, he can find as fact what the expert gave as an opinion. For a fact finder to award damages for a particular condition to a plaintiff it must find as a fact that the condition was legally caused by the defendant's conduct.... [I]t is the intent of our law that if the plaintiff's ... expert cannot form an opinion with sufficient certainty so as to make a [professional] judgment, there is nothing on the record with which a [factfinder] can make a decision with sufficient certainty so as to make a legal judgment." *McMahon v. Young*, 442 Pa. 484, 486, 276 A.2d 534, 535 (1971). However, to make an admissible statement on causation, an expert need not testify with absolute certainty or rule out all possible causes of a condition. *Bialek v. Pittsburgh Brewing Company*, 430 Pa. 176, 242 A.2d 231 (1968); *Ritson v. Don Allen Chevrolet, supra* [233 Pa.Super. 112, 336 A.2d 359 (1975)]. Expert testimony is admissible when, taken in its entirety, it expresses reasonable certainty that the accident was a substantial factor in bringing about the injury. *Hussey v. May Department Stores, Inc., supra,* 238 Pa.Super. [431] at 437, 357 A.2d [635] at 638 [(1976)]. The expert need not express his opinion in precisely the same language we use to enunciate the legal standard. See *In re Jones*, 432 Pa. 44, 246 A.2d 356 (1968) (medical testimony need not conform to precise statutory definitions). That an expert may, at some point during his testimony, qualify his assertion does not necessarily render his opinion inadmissibly speculative. *Woods v. Pleasant Hills Motor Company*, 454 Pa. 224, 309 A.2d 698 (1973); *Commonwealth v. Joseph*, 451 Pa. 440, 304 A.2d 163 (1973).

*Id.,* 263 Pa.Superior Ct. at 21–22, 396 A.2d at 1355–1356 (emphasis added) (footnotes omitted).

See also: *Hreha v. Benscoter*, 381 Pa.Super. 556, 560–561, 554 A.2d 525, 527 (1989), *allocatur denied*, 524 Pa. 608, 569 A.2d 1367 (1989).

Dr. Hunter testified that the radial nerve scarring which he had observed during surgery in 1986 was consistent with the sensations plaintiff had experienced at the time of the injection and fully accounted for the sudden appearance of a wrist drop. He opined that plaintiff's wrist drop was "related to" an injection. This testimony was properly received and, with other testimony, was sufficient to permit a finding that an injection in August, 1982, had caused the plaintiff-appellee's wrist drop.

A second opinion on causation was elicited from Richard Kaplan, M.D., a specialist in physical therapy and rehabilitation who had participated in plaintiff's treatment. He testified as follows:

Q. Based upon your review of [Dr. Hunter's] records in conjunction with your own findings, your own examination and your own testing, what conclusions did you reach?

A. Well, I was able to definitely conclude that Miss Cohen sustained a radial nerve injury that resulted in scarring of the radial nerve, and this was directly a result of the injection.

In view of the foregoing medical testimony, we are of the opinion that plaintiff's evidence was sufficient to prove causation between the injection and the wrist drop; and, therefore, the trial court properly denied the hospital's post-trial motion for judgment n.o.v.

■ We agree with appellant, however, that trial errors require the granting of a new trial. The first of these errors was the trial court's refusal to allow the jury to learn that the plaintiff was suffering from a psychiatric disorder known as Munchausen Syndrome.

Munchausen Syndrome is well recognized in the medical literature.[2] The syndrome has been described as the "[r]epeated fabrication of illness, usually acute, dramatic and convincing." Merck Manual, Fifteenth Edition, 1987. It is

2. It is included as a diagnostic category in the most recent (Third) edition of the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (DSM–III).

a mental disorder "in which an individual voluntarily produces or simulates illness for no apparent purpose other than to assume the sick role, i.e., to be a patient." Hyler and Sussman, Chronic Factitious Disorder with Physical Symptoms (the Munchausen Syndrome), Psychiatric Clinics of North America, Vol. 4, No. 2, August, 1981. Appellant offered to prove that because of plaintiff's psychiatric illness she had either fabricated her injury or produced it herself during a drug induced stupor by leaning on her arm and compressing it against a hard surface, thereby placing pressure on the nerve.

 Questions pertaining to the relevancy of evidence are within the sound discretion of the trial court, and the court's rulings thereon will be reversed on appeal only where there has been an abuse of discretion and actual prejudice. *Lewis v. Mellor*, 259 Pa.Super. 509, 515, 393 A.2d 941, 944 (1978), quoting *Westerman v. Stout*, 232 Pa.Super. 195, 202, 335 A.2d 741, 745 (1975). See also: *Pirches v. General Accident Insurance Co.*, 354 Pa.Super. 303, 307, 511 A.2d 1349, 1351 (1986). However, the unjustified exclusion of relevant evidence, otherwise admissible, is an abuse of discretion.

"Generally, it may be said that any legally competent evidence which, when taken alone or in connection with other evidence, tends to prove or disprove a material or controlling issue or to defeat the rights asserted by one or the other parties, and sheds any light upon or touches the issues in such a way as to enable the jury to draw a logical and reasonable inference with respect to the matter or principal fact in issue, is relevant. As thus defined, relevancy means the logical relation between the proposed evidence and a fact to be established." *Commonwealth v. Vukovich*, 301 Pa.Super. 111, 118, 447 A.2d 267, 270 (1982), quoting 29 Am.Jur.2d 302, 303, Evidence, § 252. "The law furnishes no test of relevancy, but tacitly refers it to logic and general experience. Evidence is admissible which tends to make the fact at issue more or less probable or intelligible or to show the origin and

history of the transaction between the parties and explain its character."

*Reichman v. Wallach, supra* at 190, 452 A.2d at 508. In the instant case, the general exclusion of all evidence regarding Munchausen's Syndrome deprived the jury of information which was relevant to assist it in weighing the credibility of plaintiffs' testimony regarding the injection and subsequent injury. The evidence was also relevant to a determination of plaintiff's damages.

■ The introduction of plaintiff's medical history would admittedly have increased the complexity of this already difficult case, but a trial court's chief concern must be to allow the jury to hear all evidence relevant to the issue being decided and to exclude only that evidence which is inadmissible as a matter of law or which is unduly prejudicial. *Christy v. Darr,* 78 Pa.Commw. 354, 358, 467 A.2d 1362, 1364 (1983). See also: *In re Gaston's Estate,* 361 Pa. 105, 112, 62 A.2d 904, 908 (1949). In the instant case, evidence regarding the plaintiff's affliction with Munchausen's Syndrome was directly relevant to the hospital's defense that no injection had been given. Dr. Janofsky, a forensic psychiatrist, would have testified, if permitted to do so, that he had reviewed plaintiff's voluminous medical records and was of the opinion that she suffered from Munchausen's syndrome. This psychiatric disorder, he would have testified, rendered unreliable the plaintiff's recitation of subjective medical symptoms.

■ A witness is qualified to render an expert opinion if he has "sufficient skill, knowledge, or experience in that field or calling so as to make it appear that his opinion or inference will probably aid the trier in his search for truth." *Dambacher by Dambacher v. Mallis,* 336 Pa.Super. 22, 36, 485 A.2d 408, 415 (1984), *appeal dismissed,* 508 Pa. 643, 500 A.2d 428 (1985). See also: *Taylor v. Spencer Hospital,* 222 Pa.Super. 17, 22–23, 292 A.2d 449, 452 (1972); *Gray v. H.C. Duke & Sons, Inc.,* 387 Pa.Super. 95, 107, 563 A.2d 1201, 1207 (1989), *allocatur denied,* 525 Pa. 583, 575 A.2d 114 (1990). Jeffrey Janofsky, M.D., was an Assistant Professor

of Psychiatry and Behavioral Sciences at The John Hopkins University School of Medicine and Hospital. He had had clinical experience with Munchausen's patients. Dr. Janofsky's training and experience were such that he was clearly qualified to explain the characteristics of Munchausen's and to offer an expert opinion as to whether plaintiff's medical history demonstrated the existence of this disorder.

 Dr. Janofsky's expert opinion testimony was not rendered inadmissible merely because it was based on medical records not in evidence. In *Commonwealth v. Thomas*, 444 Pa. 436, 282 A.2d 693 (1971), the Supreme Court sanctioned the use of such testimony, reasoning as follows:

In Pennsylvania, our cases have heretofore ruled that an expert may not state a conclusion which is based on evidence not in the record.... However, several jurisdictions influenced by the teaching of highly regarded legal commentators have recognized an exception to this rule and have permitted medical witnesses to express opinion testimony on medical matters based, in part, upon reports of others which are not in evidence, but which the expert customarily relies upon in the practice of his profession....

As Professor Wigmore explains, "where the information is that of an attending nurse or physician having personal observations and an interest in learning and describing accurately, there seems to be every reason for admitting testimony based in part on this." 3 Wigmore, Evidence § 688(4) (Chadbourn Revision).

It appears to us that the foregoing limited exception is wise and salutary, hence we adopt it as the law in Pennsylvania. (Citations omitted.)

*Id.*, 444 Pa. at 445, 282 A.2d at 698–699. See also: *Smith v. Brooks*, 394 Pa.Super. 327, 343, 575 A.2d 926, 934 (1990); *Kearns by Kearns v. DeHaas*, 377 Pa.Super. 200, 213, 546 A.2d 1226, 1233 (1988), *allocatur denied*, 522 Pa. 584, 559 A.2d 527 (1989); *Cooper v. Burns, supra*. That Dr. Janofsky's opinion was not based on his personal examination of the plaintiff goes to the weight of his testimony, not to its

admissibility. The weight to be assigned the testimony was an issue for the jury's determination.

 The trial court has suggested that portions of Dr. Janofsky's testimony were excluded because they were speculative and exceeded his area of expertise.[3] Even if this were so, however, the witness's improper remarks could have been excluded without disallowing the relevant information which he had to impart. The fact that his written report contained speculative comments did not render incompetent the entirety of his testimony.

 The trial court has also sought to justify its exclusion of Dr. Janofsky's testimony on grounds that it would have constituted an improper comment on plaintiff's credibility and would, therefore, have usurped the function of the jury. This reasoning was fallacious. Evidence of mental illness or a disability which impairs a witness' ability to perceive, remember and narrate perceptions accurately is invariably admissible to impeach credibility, even if not adequate to demonstrate incompetency. See: Packel & Poulin, Pennsylvania Evidence, § 608.4, citing *Commonwealth v. Goldblum*, 498 Pa. 455, 447 A.2d 234 (1982); *Commonwealth v. Mason*, 358 Pa.Super. 562, 518 A.2d 282 (1986), *allocatur denied*, 516 Pa. 640, 533 A.2d 711 (1987); *Commonwealth v. Gaerttner*, 335 Pa.Super. 203, 484 A.2d 92 (1984); *Commonwealth v. Butler*, 232 Pa.Super. 283, 331 A.2d 678 (1974). "The evidence can be said to affect the credibility of a witness when it shows that his mental disorganization in some way impaired his capacity to observe the event at the time of its occurrence, to communicate accurately and truthfully at trial, or to maintain a clear recollection in the meantime." *Commonwealth v. Butler, supra*, 232 Pa.Superior Ct. at 287, 331 A.2d at 680. The

3. Dr. Janofsky's written report included comments such as the following:
 "Remark: Although not picked up by staff, Miss Cohen might have been self-administering thyroid to herself during this admission. There was never any etiology for the thyrotoxicosis found."
 "Remark: Although not considered by staff, Miss Cohen may have surreptitiously not taken the Coumadin".

psychiatric condition from which Ms. Cohen suffered, according to Dr. Janofsky, was characterized by fabrication of symptoms and medical history, in addition to the self-infliction of bodily injury. The presence of Munchausen's Syndrome, therefore, impacted directly on plaintiff's ability to report truthfully the events and subjective symptoms surrounding the incident in question.

We conclude, therefore, that it was prejudicial error to exclude the testimony of Dr. Janofsky who would have testified that Ms. Cohen was suffering from Munchausen's Syndrome and would have explained the nature and effect of that disorder.

The trial court also erred when it excluded opinion testimony by Dr. Haase, a neurologist, that plaintiff's report of pain extending into all the fingers of the left hand was inconsistent with nerve injury and that an earlier shoulder/arm injury made it impossible, medically, to identify that an injection was the cause for plaintiff's wrist drop. This testimony was not properly excluded on grounds that it had somehow been offered in violation of Pa.R.C.P. 4003.5(a)(1).

This rule provides as follows:

(1) A party may through interrogatories require

(a) any other party to identify each person whom the other party expects to call as an expert witness at trial and to state the subject matter on which the expert is expected to testify and

(b) the other party to have each expert so identified by him state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion. The party answering the interrogatories may file as his answer a report of the expert or have the interrogatories answered by his expert. The answer or separate report shall be signed by the expert.

In this case, appellant had supplied plaintiff's attorney with a pre-trial report which stated the doctor's findings on physical examination and his conclusions. In answer to

plaintiff's interrogatories, the defendant also had supplied portions of medical records and an index to indicate those sections relied on by defendant's experts. Finally, plaintiff's attorney, when given the opportunity to question Dr. Haase during a pre-trial deposition, had declined to do so. The information supplied and the opportunity to question the witness before trial fully satisfied the requirements of Rule 4003.5. See: *Mecca v. Lukasik*, 366 Pa.Super. 149, 164, 530 A.2d 1334, 1341 (1987).

The plaintiff-appellee argues that even if the court's ruling was erroneous, the error was harmless, because appellant was not prejudiced by the exclusion of this testimony. We disagree. As a result of the trial court's ruling, appellant lost a critical opportunity to rebut plaintiff's contention that the wrist drop had been caused by an injection. Had the jury heard and believed Dr. Haase, a different verdict may have resulted. See: *Curran v. Stradley, Ronon, Stevens & Young*, 361 Pa.Super. 17, 32–33, 521 A.2d 451, 458 (1987); *Mapp v. Dube*, 330 Pa.Super. 284, 288, 479 A.2d 553, 556 (1984). The error, therefore, was not harmless.

 Appellant also assigns as error the trial court's exclusion of portions of the videotaped testimony of Dr. George Ehrlich, who had treated Ms. Cohen at Hahnemann Hospital approximately a year before the alleged injection. Dr. Ehrlich was permitted to testify regarding a pre-existing disability of plaintiff's left arm and hand. However, the court excluded testimony that Ms. Cohen had been diagnosed as addicted to Demerol. Plaintiff's drug dependence was relevant and probative of the issue of causation, for it formed the basis of the hospital's assertion that the radial nerve damage had occurred as a result of a pressure injury during an episode of narcosis. It was also relevant to the credibility of appellee's testimony. Therefore, it could be excluded only if its probative value were substantially outweighed by the potential prejudice to be caused by its receipt.

Dr. Ehrlich's testimony, if allowed, would have revealed that plaintiff had been dependent on medication prescribed by physicians to control chronic and severe pain. His testimony did not imply and the defendant-hospital did not contend that Cohen was a criminal abuser of narcotics. Dr. Ehrlich's testimony, therefore, did not constitute an impermissible comment on plaintiff's character; it was not evidence of prior criminal acts. To exclude evidence of plaintiff's addiction to Demerol was, in fact, to exclude evidence of a medical fact relevant to a determination of the cause for plaintiff's wrist drop. The court's ruling which excluded this evidence, therefore, was an abuse of discretion.

Appellant also contends that the trial court erred in excluding portions of the videotaped cross-examination of Dr. Hunter which dealt with Munchausen's, drug addiction and the scope of his review of past medical records. Although this evidence was relevant and involved matters affecting the credibility and weight of Dr. Hunter's testimony, its exclusion does not provide a basis for reversal. The trial court has broad discretion to control the mode and order of interrogating witnesses by restricting cross-examination. See: *Kline v. Kachmar,* 360 Pa. 396, 405, 61 A.2d 825, 830 (1948). The exclusion of portions of the cross-examination of Dr. Hunter was not the ruling which precluded relevant evidence offered by the defense. *Kearns by Kearns v. DeHaas, supra,* 377 Pa.Superior Ct. at 205, 546 A.2d at 1228–1229; *Commonwealth v. Cessna,* 371 Pa.Super. 89, 97, 537 A.2d 834, 838 (1988); *Commonwealth v. Lobel,* 294 Pa.Super. 550, 556, 440 A.2d 602, 605 (1982).

Similarly, we do not base reversal on the trial court's refusal to allow cross-examination of plaintiff by using answers to interrogatories prepared by her previous attorney and submitted without her signature. Even if the answers had been authorized and adopted by plaintiff, the exclusion of this evidence was not prejudicial because the information concerning previous and subsequent left arm injury was proved at trial by other means.

 It was improper, however, for the trial court to refuse a general instruction regarding the nature and purpose of circumstantial evidence after a specific request for such an instruction had been made. Although the trial court was not required to accept the precise language of the point for charge submitted by the defendant, see: *Cooper v. Burns, supra* at 283, 545 A.2d at 938, the Court was required, upon request, to explain to the jury the nature of circumstantial evidence and tell the jury that ultimate facts may, at times, be inferred from other facts by a process of reasoning. Cf. *Griffith v. Clearfield Truck Rentals, Inc.,* 427 Pa. 30, 44, 233 A.2d 896, 903 (1967); *ARCO Metalscraft Co. v. Shaw,* 364 Pa. 39, 44, 70 A.2d 850, 853 (1950). It was not an adequate substitute for such an instruction to tell the jury that it should apply its common sense in arriving at a verdict.

An instruction on circumstantial evidence was essential in the instant case, as appellant contends, because its defense was largely dependent upon inferences that could be drawn from circumstances proved. Appellant argued, inter alia, that the plaintiff's expert testimony regarding the anatomical position of the radial nerve in the upper arm, taken in conjunction with plaintiff's testimony that she was lying on her back at the time of the injection, gave rise to an inference that the nerve could not have been injected as plaintiff described. Appellant also asserted that from the evidence of plaintiff's accidents and injuries which had occurred, both prior and subsequent to the alleged injection, the jury could have inferred that the persistent wrist drop was attributable to occurrences other than an injection. Because these arguments were made and supported by factual evidence, the defendant hospital was entitled to an instruction which introduced the jury to an understanding of the nature and purpose of circumstantial evidence.

 The trial court also erred when it instructed the jury that, despite the absence of evidence relating to the cost of future hospitalization, it should "rely upon your common knowledge as to hospital costs, because we don't

even know when she's going to have it." "If [a] jury charge is fundamentally erroneous or has a tendency to mislead or confuse ... a new trial will be required so long as that portion of the charge in question *might have been responsible* for the verdict." *Niles v. Fall Creek Hunting Club, Inc.*, 376 Pa.Super. 260, 270, 545 A.2d 926, 931 (1988), quoting *Hoffman v. Memorial Osteopathic Hospital*, 342 Pa.Super. 375, 382, 492 A.2d 1382, 1386 (1985) (emphasis added).

 An item of damage claimed by a plaintiff can properly be submitted to the jury only where the burden of establishing damages by proper testimony has been met. See: *Gordon v. Trovato*, 234 Pa.Super. 279, 283, 338 A.2d 653, 654 (1975), citing *Link v. Highway Express Lines, Inc.*, 444 Pa. 447, 282 A.2d 727 (1971). "The amount and items of pecuniary damage cannot be presumed but must be proved by the establishment of facts." *Gordon v. Trovato, supra,* citing *Maxwell v. Schaefer*, 381 Pa. 13, 112 A.2d 69 (1955). A plaintiff need only provide the jurors with a reasonable amount of information sufficient to enable them to estimate damages without engaging in speculation. *Slater v. Pennsylvania Power Co.*, 383 Pa.Super. 509, 515, 557 A.2d 368, 371 (1989), *allocatur denied*, 525 Pa. 585, 575 A.2d 115 (1990), citing *Bolus v. United Penn Bank*, 363 Pa.Super. 247, 525 A.2d 1215 (1987), *allocatur denied*, 518 Pa. 627, 541 A.2d 1138 (1988).

Instantly, plaintiff's only evidence pertaining to the amount of future hospital costs was presented during the direct examination of Dr. Hunter, when he testified as follows:

Q. And, doctor, do you have any idea of what the fair and reasonable charges for that surgical procedure and the hospital stay and the necessary therapy would be?
A. Well, if it could all be done at one time, with preparation for the surgery, the surgery would probably be about $5,000. I guess her time in the hospital, three to five days, an[d] anesthesia would be at least four hours.

And the hospitalization could be kept at a minimum, maybe three days, and—but she would need then organized after-care, once or twice a week for an extended period, and she'd need to have some help traveling. She might need some help at home, 'cause some of her hand function would be changed. I—I don't know that for sure.

Q. Do you have some approximation of the cost of all those things, if you know?

A. Well, the hospital cost changed daily.

Q. At the present time, what—what the cost is?

A. I really don't know what it is at the present time. It's astronomical, I think. Anesthesia—actually, the—the surgeon's fee becomes a small part of trying to care for this.

This testimony failed to provide an adequate basis to permit the jury to ascertain the amount of future hospital costs. The doctor was unable to estimate the costs of future hospital care and characterized the potential amount as "astronomical." The trial court's instruction invited the jury to speculate about such costs. The costs of complex, in-hospital medical and surgical care are not matters of common knowledge. Even persons who have incurred such costs may not be familiar with the amounts if they have been insulated from this information by third party payment. The trial court's explicit direction to assess future medical costs from insufficient evidence may well have resulted in an excessive verdict that was based in part on conjecture. The trial court's instruction regarding future hospital costs, therefore, was erroneous.

Because we have determined that the jury's verdict may have been influenced by erroneous evidentiary rulings and by inadequate and inaccurate jury instructions, a new trial is required.

Reversed and remanded for a new trial. Jurisdiction is not retained.