J-A24008-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| JEAN-BAPTISTE GUIRLENE | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DONNA RYAN, AS ADMINISTRATIX | : | No. 1851 EDA 2018 |
| OF THE ESTATE OF MYCHAJLO | : | |
| JAREMIJCZUK | : | |

Appeal from the Order Entered June 7, 2018
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s): 170302707

BEFORE:   BENDER, P.J.E., DUBOW, J., and COLINS, J.[*]

MEMORANDUM BY BENDER, P.J.E.:          **FILED FEBRUARY 24, 2020**

Appellant, Guirlene Jean-Baptiste,[1] appeals from the trial court's June 7, 2018 order granting Appellee's, Donna Ryan, as administratrix of the estate of Mychajlo Jaremijczuk, motion for post-trial relief.  In that order, the trial court set aside the jury's verdict and directed that a new trial on all issues take place.  After careful review, we affirm.

The trial court summarized the procedural history and factual background of this case as follows:

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] We note that the caption incorrectly names Appellant as "Jean-Baptiste Guirlene," instead of "Guirlene Jean-Baptiste."  Because the caption apparently has been incorrect throughout the entire proceedings below and neither party asks us to amend it, we will leave it as is.

I. PROCEDURAL HISTORY

On May 2, 2018, following trial, a jury returned a verdict against [Appellee] and awarded [Ms. Jean-Baptiste] $600,000 in future economic damages for future medical expenses.  Liability was not at issue.  The jury found that [Ms. Jean-Baptiste] did not suffer serious impairment of a body function.[2]  *See* Verdict Slip [at] Question 3.  The jury did not award [Ms. Jean-Baptiste] non-economic damages.  *See* Verdict Slip [at] Question 4.

On May 10, 2018, [Appellee] filed a [p]ost-[t]rial [m]otion.  On June 7, 2018, this [c]ourt granted [Appellee's] [p]ost-[t]rial [m]otion, set aside the verdict, and ordered a new trial on all issues.

On June 12, 2018, [Ms. Jean-Baptiste] filed a notice of appeal.[3]  On June 18, 2018, [Ms. Jean-Baptiste] file[d] a [m]otion for [r]econsideration of the order granting [Appellee's] [p]ost-[t]rial [m]otion, which was denied on June 29, 2018.  On July 2, 2018, [Ms. Jean-Baptiste] filed [a timely Pa.R.A.P. 1925(b) concise] [s]tatement of [e]rrors [c]omplained of on [a]ppeal….

II. FACTS

[Ms. Jean-Baptiste] testified that on August 5, 2015[,] at approximately 11:00 a.m.[,][1] … she was driving on Roosevelt Boulevard in Philadelphia when she was rear[-]ended by a vehicle operated by [Mr. Jaremijczuk].  [Ms. Jean-Baptiste] testified that the impact was hard and that her neck, shoulder[,] and back hurt immediately.  [Ms. Jean-Baptiste] was transported by ambulance to the hospital.  At the hospital, [Ms. Jean-Baptiste] underwent a CT scan.  She was given a prescription for ibuprofen and discharged.  Shortly thereafter, [Ms. Jean-Baptiste] consulted her

---

[2] Ms. Jean-Baptiste is a limited-tort plaintiff.  A limited-tort plaintiff "may seek recovery for all medical and other out-of-pocket expenses, but not for pain and suffering or other nonmonetary damages unless the injuries suffered fall within the definition of 'serious injury'…."  75 Pa.C.S. § 1705(a)(1).  In contrast, a full-tort plaintiff "may seek recovery for all medical and other out-of-pocket expenses and may also seek financial compensation for pain and suffering and other nonmonetary damages as a result of injuries caused by other drivers."  *Id.*

[3] An appeal may be taken as of right from an order in a civil action awarding a new trial.  *See* Pa.R.A.P. 311(a)(6).

primary care physician, who recommended physical therapy. [Ms. Jean-Baptiste] commenced physical therapy about a month later, attending approximately three times a week for six to seven months. [Ms. Jean-Baptiste] testified that she cannot bend her back as well as she could before the accident and that she can no longer lift heavy objects. As a result of the accident, [Ms. Jean-Baptiste] testified that she missed three days of work as [a] certified nursing assistant ("CNA")[,] that she takes ibuprofen for her pain[,] and that she received two injections for pain relief in her neck just below the shoulder. [Ms. Jean-Baptiste] testified that the pain has persisted, especially in the morning when her neck and shoulder are stiff.

> [1] [Ms. Jean-Baptiste's] [c]omplaint indicates that the accident occurred on August 7, 2015; also see N.T., 4/30/18[,] at 99-100.

[Ms. Jean-Baptiste's] expert, Dr. Lance Yarus ("Dr. Yarus"), testified that he believed [Ms. Jean-Baptiste] would require future medical care. Dr. Yarus testified about possible future medical care and associated costs. The future medical expenses included: rhizotomy or the burning of the nerves ($3,500-4,000, with associated surgical fees of $2,500-3,000), epidural injections ($850-1,100), ultrasound ($250-300), additional medications other than ibuprofen including opioids, anti-inflammatories, muscle relaxers, membrane stabilizers ($850-1,200/month), MRIs ($1,800-1,900),[4] another round of physical therapy ($950-1,250/week), electrodiagnostic testing on a yearly basis, epidurography (injecting dye into the area of pain to image the nerves), and possibly two different types of surgery: (1) disc removal ($22,000-25,000) and (2) fusion and stabilization ($165,000-170,000).

Based on the testimony and [Ms. Jean-Baptiste's] life expectancy of 34 years, a jury returned a verdict against [Appellee] and awarded [Ms. Jean-Baptiste] $600,000 in future economic damages.

Trial Court Opinion ("TCO"), 11/14/18, at 1-3 (most internal citations omitted; commas added to some numbers).

---

[4] MRI stands for magnetic resonance imaging.

As mentioned *supra*, upon granting Appellee's post-trial motion, the trial court set aside the jury's $600,000 verdict in favor of Ms. Jean-Baptiste and ordered that a new trial take place on all issues. The trial court set forth two grounds for its decision: first, it explained that the jury's verdict of $600,000 in future economic damages was against the weight of the evidence and so grossly excessive as to shock its sense of justice; and, second, it stated that the verdict slip incorrectly permitted the jury to consider the question of future economic damages before determining whether Ms. Jean-Baptiste had suffered a serious injury. **See** TCO at 6, 10-11. As a result of this ruling, Ms. Jean-Baptiste submits a single issue for our review:

> Whether the trial court abused its discretion and otherwise committed an error of law when it improperly set aside [Ms. Jean-Baptiste's] verdict of $600,000?

Ms. Jean-Baptiste's Brief at 9.[5]

Though Ms. Jean-Baptiste raises a single issue in her statement of questions involved, she divides her argument into two sections in contravention of Pa.R.A.P. 2119(a). **See** Pa.R.A.P. 2119(a) ("The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part—in distinctive type or in type distinctively displayed—the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent."); **Donaldson v. Davidson Bros., Inc.**, 144 A.3d 93, 99 n.9 (Pa. Super. 2016) (determining

---

[5] We note that the Pennsylvania Association for Justice has filed a brief of *amicus curiae* in support of Ms. Jean-Baptiste.

that the appellant failed to comply with Rule 2119(a) where the appellant's brief did not "present and develop eight arguments in support of the eight questions raised"). Notwithstanding Ms. Jean-Baptiste's noncompliance, our review is not precluded.

In the first section of Ms. Jean-Baptiste's brief, she challenges the trial court's determination that the jury's verdict of $600,000 for future economic damages was against the weight of the evidence and so excessive that it shocked its sense of justice. For such claims, we apply the following standard of review:

> Appellate review of a weight claim is a review of the [trial court's] exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.
>
> The factfinder is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. The trial court may award a … new trial only when the jury's verdict is so contrary to the evidence as to shock one's sense of justice. In determining whether this standard has been met, appellate review is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion. When a fact finder's verdict is so opposed to the demonstrative facts that looking at the verdict, the mind stands baffled, the intellect searches in vain for cause and effect, and reason rebels against the bizarre and erratic conclusion, it can be said that the verdict is shocking.

*Haan v. Wells*, 103 A.3d 60, 70 (Pa. Super. 2014) (brackets in original; internal citations and quotation marks omitted).

Here, the trial court provided the following rationale for why it set aside the jury's verdict and ordered a new trial:

> "It is well-settled that an item of damage claimed by a plaintiff can properly be submitted to the jury only where the burden of establishing damages by proper testimony has been met." *Mendralla v. Weaver Corp.*, 703 A.2d 480, 485 (Pa. Super. … 1997); *Cohen v. Albert Einstein Medical Center*, 592 A.2d 720, 729 (Pa. 1991). "In the context of a claim for future medical expenses, the movant must prove, by expert testimony, not only that future medical expenses **will** be incurred, but also the reasonable estimated cost of such services." *Id.* (emphasis added). "Because the estimated cost of future medical services is not within the layperson's general knowledge, the requirement of such testimony eliminates the prospect that the jury's award will be speculative." *Id.*; *Cohen*, 592 A.2d at 729.
>
> In determining whether a jury's award of damages is supported by the evidence, the following factors are taken into account:
>
> > 1. the severity of the injury[;]
> >
> > 2. whether the injury is demonstrated by objective physical evidence or subjective evidence[;]
> >
> > 3. whether the injury is permanent[;]
> >
> > 4. the plaintiff's ability to continue employment[;]
> >
> > 5. the disparity between the amount of out of pocket expenses and the amount of the verdict; and
> >
> > 6. damages plaintiff requested in his complaint.
>
> *Gillingham v. Consol Energy, Inc.*, 51 A.3d 841, 861 (Pa. [Super.] 2012).
>
> Based upon testimony from [Ms. Jean-Baptiste's] expert, Dr. Yarus, which included estimated values for future medical care, the jury was instructed on future medical expenses. *See* 7.30 (CIV) Future Medical Expenses, Pa. SSJI. This instruction may be appropriately given where the jury could reasonably infer that the

plaintiff would require future medical treatment based on evidence of past medical expenses and evidence of the permanent nature of the disability. ***Pratt v. Stein***, 444 A.2d 674, 697 (Pa. Super. … 1982).

The jury's verdict of $600,000 for future economic damages is against the weight of the evidence and so grossly excessive as to shock the [c]ourt's sense of justice. This is especially true under the particular circumstances of this case, where the jury found that [Ms. Jean-Baptiste] did not suffer a serious impairment of a body function. ***See*** Verdict [S]lip at [Q]uestion 3.

[Ms. Jean-Baptiste's] own expert, Dr. Yarus, testified to the severity of [Ms. Jean-Baptiste's] injuries and whether the injury was demonstrated by objective evidence. Dr. Yarus testified that [Ms. Jean-Baptiste] suffered … a herniated disc at C5-C6. N.T., 4/30/18[,] at 77. However, Dr. Yarus did not testify that [Ms. Jean-Baptiste's] injuries were permanent. Dr. Yarus further testified that [Ms. Jean-Baptiste] suffered soft tissue injuries to the neck; a C5-C6 bilateral radiculopathy; and chronic pain syndrome. ***Id.*** at 76-77.

[Ms. Jean-Baptiste] testified that she missed just three days of work as a CNA as a result of this accident. ***Id.*** at 61, 98. According to [Ms. Jean-Baptiste], most of her neck and shoulder pain occurred in the morning; she has never taken anything other than ibuprofen for pain; her social activities were not affected by her injuries; and … her treatment consisted of physical therapy and two injections. ***Id.*** at 63, 97, 105[.]

The jury's verdict is against the weight of the evidence and so grossly excessive as to shock the [c]ourt's sense of justice because [Ms. Jean-Baptiste] did not suffer a serious injury and the evidence did not warrant an award of $600,000.

TCO at 5-7.

In response, Ms. Jean-Baptiste argues that "credible evidence was presented to the jury without objection of required future care for [Ms. Jean-Baptiste]; the cost of the future care was estimated to be approximately $700,000; [and] the jury returned a verdict of $600,000. The verdict is 100%

in line with the evidence presented and should not have been set aside."  Ms. Jean-Baptiste's Brief at 13.  She advances, *verbatim*:

> The critical evidence presented was that of the cost of future medical care.  As explained above, Dr. Yarus testified to the future care that Ms. Jean-Baptiste grows older and her condition worsens as a result of the trauma from the crash.  Again, no objections were lodged to the presentation of the need for future medical care, nor was an objection lodged to the cost of the future care being presented to the jury.  RR-93.
>
> Dr. Yarus testified to the estimated cost of the future treatment. He explained that Ablation procedures can cost between $3,500 to $4,000, with surgical fees ranging from $2,500 to $3,000.  RR-91.  Facet injections cost between $850 to $1,100 and further diagnostic testing costs $1,800 per MRI.  RR-91.  Therapy was determined to cost Ms. Jean-Baptiste $1,200 a week.  RR-92.  The first surgical procedure recommended, the discectomy, costs $22,000 to $25,000 and the fusion stabilization surgery costs $165,000 to $170,000.  RR-93.  Dr. Yarus testified in accordance with his report and estimated conservatively that Ms. Jean-Baptiste will require treatment going forward that will potentially cost as much as $695,000.  RR-93.
>
> The jury is certainly within its discretion to decide to award future medical expenses without a finding a serious impairment.  Despite the seriousness of the injuries, the jury found that she did not sustain a serious impairment of a body function.  Perhaps, the jury felt that her injuries are manageable by the future care she will be able to pay for with the damages awarded.  It is certainly reasonable to assume that the jury relied on the testimony of Ms. Jean-Baptiste when she explained that the therapy and injections gave her relief and determined that *with* continued treatment a serious impairment of a body function would not be present.

Ms. Jean-Baptiste's Brief at 16-17 (emphasis in original).

No relief is due.  Initially, Ms. Jean-Baptiste does not cite, nor does our review of the transcript show, where Dr. Yarus testified that Ms. Jean-Baptiste's condition **will** worsen as she grows older as a result of the trauma from the accident.  Similarly, the transcript does not demonstrate that Dr.

Yarus testified that Ms. Jean-Baptiste **will** require treatment going forward that will potentially cost as much as $695,000.  Though Dr. Yarus outlined the costs of various treatments, he did not specifically explain which treatments Ms. Jean-Baptiste is likely to require in the future, and he failed to offer a clear estimation of how frequently — and for how long — such treatments will likely occur.  For instance, Dr. Yarus stated that "[e]pidural and/or facet injections are [$]850 to $1,100[,]" but he did not say how often Ms. Jean-Baptiste would likely need to receive them.  **See** N.T. at 91; **see also** Appellee's Brief at 14 (listing other ways in which Dr. Yarus's testimony was unclear; for example, observing that "Dr. Yarus discussed the costs of two types of surgery … but [he] failed to state which if any surgery were required or recommended for [Ms. Jean-Baptiste's] treatment").  Given that the evidence of future medical expenses is so vague and undeveloped, the trial court did not palpably abuse its discretion in finding that the jury's $600,000 verdict shocked its conscience.  **See Haan**, **supra**.

Moreover, Ms. Jean-Baptiste's care during the almost 3 years between the accident and trial does not support such a large award for future medical expenses.  At trial, Ms. Jean-Baptiste stated that she feels basically the same pain as she did at the time of the accident.  N.T. at 49, 62.  At the time of the accident, Ms. Jean-Baptiste went to the hospital, where she was discharged later that same day and told to take ibuprofen.  **Id.** at 57.  Since the accident, Ms. Jean-Baptiste has treated her injury with physical therapy, ibuprofen, two injections, and a few MRIs and EMGs.  **Id.** at 42-43, 46-48, 61, 86, 97-98,

105-06.[6] Dr. Yarus acknowledged that Ms. Jean-Baptiste has experienced some improvement with her pain through ibuprofen and therapy, and he noted that she has not been affected in her social activities, missed only three days of work as a CNA because of the accident, and continues to work full-time. *Id.* at 97-98. This evidence of her past medical care and her ability to continue with her regular activities, albeit with some limitations like lifting heavy things, does not suggest that her future medical expenses will amount to $600,000. Based on the foregoing, we discern no palpable abuse of discretion by the trial court in awarding a new trial to Appellee. ***See Haan***, ***supra***.[7]

Order affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/24/20

---

[6] Though the parties do not state what 'EMG' signifies, our research shows that it is an abbreviation for electromyogram.

[7] Given our disposition, we need not address Ms. Jean-Baptiste's issue pertaining to the propriety of the verdict slip.