J-A18034-23

2023 PA Super 230

BRENDA HUTCHINSON AND DOUGLAS HUTCHINSON

      Appellants

      v.

THIERRY C. VERSTRAETEN, M.D.; E. RONALD SALVITTI, M.D., INC., INDIVIDUALLY, D/B/A SOUTHWESTERN PENNSYLVANIA EYE CENTER, A FICTITIOUS NAME, AND D/B/A SOUTHERN PENNSYLVANIA EYE SURGERY CENTER, A FICTITIOUS NAME; AND ALLEGHENY OPHTHALMIC & ORBITAL ASSOCIATES, P.C.

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

IN THE SUPERIOR COURT OF PENNSYLVANIA

No. 886 WDA 2022

Appeal from the Judgment Entered July 26, 2022
In the Court of Common Pleas of Washington County Civil Division at
No(s): 2018-175

BEFORE: BENDER, P.J.E., LAZARUS, J., and KUNSELMAN, J.

OPINION BY KUNSELMAN, J.:           **FILED: November 8, 2023**

Brenda and Douglas Hutchinson appeal from the judgment entered on the jury's defense verdict in favor of Dr. Thierry C. Verstraeten, M.D.; E. Ronald Salvitti, M.D., Inc.; and Allegheny Ophthalmic & Orbital Associates, P.C. ("the Eye Clinic"). The Hutchinsons challenge the trial court's ruling that barred one of their experts from testifying at the jury trial. Because the Hutchinsons' arguments do not establish an abuse of discretion, we affirm.

The Hutchinsons sued the Eye Clinic for medical malpractice, based on vicarious liablity and corporate negligence. They alleged that Dr. Verstraeten

blinded Ms. Hutchinson's right eye by improperly injecting fluid into it. The Hutchinsons claimed the Eye Clinic then altered Ms. Hutchinson's medical records to conceal Dr. Verstraeten's mistake. They rooted that claim in the testimony of Jessica Page, a self-described "expert in Health Information Technology (HIT) and Operations." Hutchinsons' Renewed Motion for Sanctions, Ex. 2 at 1.

According to the Hutchinsons, the parties vociferously disputed the accuracy of Ms. Hutchinson's medical records. The doctor and his scribe testified that the March 3, 2016 medical record documented an injection into Ms. Hutchinson's eyeball, rather than below it. The Eye Clinic's health insurance billing statement also confirmed billing and payment for an injection into Ms. Hutchinson's eyeball. Thus, it was the Hutchinsons' position that the injection had gone into Ms. Hutchinson's eyeball, which occluded her Central Retinal Artery and blinded the eye. Dr. Verstraeten maintained he did not inject the fluid directly into Ms. Hutchinson's eyeball.

The Hutchinsons claimed that someone had altered Ms. Hutchinson's March 3, 2016 medical record to add or modify documentation after the fact. This prompted the Hutchinsons to hire Ms. Page as their expert witness. As the Hutchinsons claim in their brief:

> Ms. Page had years of experience managing ophthalmological practices. She also had significant experience and specialized training on the ophthalmological practice software used by [the Eye Clinic]—Medflow . . . Ms. Page authored three detailed reports about alterations to Mrs. Hutchinson's medical record.

> Ms. Page's opinions and the ongoing contentious debates over this alteration issue were based primarily upon the completeness of [the Eye Clinic's] proffered electronic medical record audit trail (sometimes referred to generally as "the audit trail"). The audit trail is a representation of the electronic medical record. It should show, among other data points, who accessed the records, where and when the records were accessed, and whether changes were made to the records.

Hutchinsons' Brief at 10-11 (citation to the reproduced record and footnotes omitted).

The Hutchinsons believed the Eye Clinic had altered Ms. Hutchinson's medical records, after her eye injury. They filed a motion to compel the production of a complete and unredacted audit trail of the medical records, which the trial court granted. The Hutchinsons further claimed the Eye Clinic's first production of an audit trail was incomplete. After they moved for sanctions, the Eye Clinic produced two more audit trails, but, according to the Hutchinsons, those trails were also incomplete.

The Hutchinsons then claimed that there were other alterations to the medical record. One such alleged alteration was a handwritten alteration of an earlier injection into Ms. Hutchinson's eyeball changed to one under her eyeball by an office employee who had not participated in the care. The trial court eventually granted the Eye Clinic's motion *in limine* to exclude this evidence, because it ruled the evidence to be irrelevant.

Ultimately, Ms. Page provided a final report, wherein she outlined all the evidence of the Eye Clinic's opinions on the alleged alteration of the electronic

and handwritten medical record. The Hutchisons summarized her opinions as follows:

- Missing Entries from the Standard Medflow Audit Trail

- Alterations in the Exported Medflow Audit Log

- Impossible Reporting Constraints for [the Eye Clinic's] Production of the 7/14/21 Audit Report

- Unexplained lengthy entries into Ms. Hutchinson's medical record by non-care providers of the Clinic

- Inappropriate corrections to and alterations of Ms. Hutchinson's paper records

- EMR Alterations of the March 3, 2016 office visit

- Invalid electronic signatures of the Doctor

Hutchinsons' Brief at 15 (citation to the reproduced record and footnotes omitted).

A few days before trial, the Eye Clinic filed a motion *in limine* to preclude Ms. Page's testimony, which the trial court granted. Opining from the bench, the court said:

the issue of the complete audit trail and the issues related to discovery with the electronic record, in my mind, is a complete separate and distinct issue [from the poor record-keeping of the Eye Clinic]. When and who accessed the records and so on, at this stage, really, is irrelevant.

And no evidence exists that anyone altered the record that helped the [Eye Clinic] or to divert the [Hutchinsons'] attention to something that would damage the Plaintiff or to – yeah, to bolster the [Hutchinsons'] case or to hurt the [Eye Clinic]. This whole issue on the audit trail at this point I find is irrelevant and is only going to cause confusion to the jury.

Further, after reading Jessica Page's -- all three reports -- but particularly the last one, she goes way beyond her expertise in handwriting and standard of care and what she does in her practice, which she is really not -- she is not qualified to do.

So, in light of everything, I am going to preclude the testimony of Jessica Page.

N.T., 8/12/21, at 161-62.

The matter proceeded to a jury trial, and the jurors ruled Dr. Verstraeten had acted within the standard of care. The jury also determined there was no corporate negligence by the Eye Clinic. The Hutchisons moved for post-trial relief, which the trial court denied. This timely appeal followed.

The Hutchisons raise three issues. They are:

1. Did the [trial] court err when it excluded the relevant testimony of [Ms. Page]?

2. Did the [trial] court err by precluding critical relevant evidence to establish grounds for an adverse inference related to the intentional alteration and/or destruction of the plaintiffs' medical record?

3. Did the [trial] court err by precluding critical relevant evidence to establish grounds for a spoliation and/or punitive damages jury charge?

Hutchinsons' Brief at 5.

As the Hutchinsons' framing of issues indicates, they misunderstand our deferential standard of review for an evidentiary ruling, such as the one they now challenge on appeal. The issue for an appellant, when challenging a trial court's evidentiary ruling, is not – as the Hutchinsons claim and argue in their brief – whether the trial court committed an "error." Instead, the proper framing of the appellate issue is whether the trial court committed an abuse

of discretion. As we explain, the Hutchisons never make an abuse-of-discretion argument anywhere in their brief. Thus, we dispose of all their appellate issues simultaneously.

At the outset of their brief, the Hutchinsons correctly acknowledge that "Questions that involve the relevancy of evidence are within the sound discretion of the trial court." *Id.* at 3 (citing ***Cohen v. Albert Einstein Medical Center***, 592 A.2d 720, 725 (Pa. Super. 1991)). They then state, "The unjustified exclusion of relevant evidence that is otherwise admissible, however, is an abuse of that discretion." *Id.* The Hutchinsons again cite ***Cohen*** for that proposition. ***See id.*** Without citing any authority, the ***Cohen*** panel did, in fact, say, "the unjustified exclusion of relevant evidence, otherwise admissible, is an abuse of discretion." ***Cohen*** at 725.

However, if that statement from ***Cohen*** were correct, this Court would review a trial court's relevancy determinations *de novo*. Under the ***Cohen*** standard of review, a mere difference of opinion between this Court and the trial court as to what constitutes relevant evidence would also constitute an abuse of discretion. Indeed, a close reading of ***Cohen*** reveals that the panel reviewed the case's evidence *de novo* and substituted its relevancy judgments of the evidence to reverse the trial court and award the hospital a new trial.

***Cohen*** involved a hospitalized woman who supposedly suffered from Munchausen's Syndrome, the "repeated fabrication of illness, usually acute, dramatic and convincing." *Id.* at 724 (quoting MERCK MANUAL, 15th Ed., 1987) (some punctuation omitted). Ms. Cohen claimed that, on her second or third

day in the hospital, an unknown nurse administered an injection into her arm to treat arthritis. She "felt a shock run down her arm and into her hand and fingers. Thereafter, her left hand dropped uselessly at the wrist." *Id.* at 722.

Despite this adverse result, Ms. Cohen "did not report to anyone the sudden pain and disability, and the hospital records [did] not contain any reference to the injection." *Id.* A week later, a doctor first noted "a left wrist drop of unknown etiology." *Id.* (quotation omitted). The condition lasted four years, and she eventually had surgery to alleviate the pain and disability. Her surgeon found "scarring of Ms. Cohen's radial nerve . . . ." *Id.* She sued the hospital whose unidentified nurse had allegedly performed the arm injection.

As part of its defense, the hospital wished to call "a forensic psychiatrist [to testify] that he had reviewed [Ms. Cohen's] voluminous medical records and was of the opinion that she suffered from Munchausen's Syndrome." *Id.* at 725. Based on his testimony, the hospital wanted to argue to the jury that, "because of [Ms. Cohen's alleged] psychiatric illness she had either fabricated her injury or produced it herself during a drug-induced stupor by leaning on her arm and compressing it against a hard surface, thereby placing pressure on the nerve." *Id.* at 724. Ms. Cohen objected to the expert's testimony on the grounds that it was irrelevant, would confuse the jury by adding issues of her mental health to the trial, would call for speculation, and would exceed the psychiatrist's expertise. The trial court agreed on all points and precluded him from testifying. The jury returned a verdict in favor of Ms. Cohen.

On appeal, the **Cohen** panel initially said: "Questions pertaining to the relevancy of evidence are within the sound discretion of the trial court, and the [trial] court's rulings thereon will be reversed on appeal only where there has been an abuse of discretion and actual prejudice." **Id.** at 725 (citing **Lewis v. Mellor**, 393 A.2d 941, 944 (Pa. Super. 1978), **Westerman v. Stout**, 335 A.2d 741, 745 (Pa. Super. 1975), and **Pirches v. General Accident Insurance Co.**, 511 A.2d 1349, 1351 (Pa. Super. 1986)). However, the panel failed to define an abuse of discretion. Instead, **Cohen** converted the abuse-of-discretion review into a *de novo* review by announcing that "the unjustified exclusion of relevant evidence, otherwise admissible, is an abuse of discretion." **Id.** at 725. This circular statement transformed the underlying relevancy judgment into the linchpin for an abuse of discretion. By doing so, **Cohen** eliminated any discretion for the trial court's decision.

Thereafter, the **Cohen** Court mostly ignored the trial court's analysis of the relevancy issue and replaced it with its own. Indeed, it only paraphrased the trial court's reasoning and reduced its logic to a caricature. Then, after quoting the rules on relevancy, **Cohen** decreed:

> In the instant case, the general exclusion of all evidence regarding Munchausen's Syndrome deprived the jury of information which was relevant to assist it in weighing the credibility of [Ms. Cohen's] testimony regarding the injection and subsequent injury. The evidence was also relevant to a determination of [her] damages.

**Id.** This conclusory language is the product of a *de novo* review, where an appellate court substitutes its judgment for that of the trial court.

- 8 -

Absent from **Cohen** is any discussion of how or why the trial court's reasoning was flawed. There is no contention that the trial court illogically balanced the value of the expert's testimony against its likelihood of confusing the jury or creating a trial on Ms. Cohen's mental health within the trial on the hospital's malpractice. The panel instead said that introducing Ms. Cohen's "medical history would admittedly have increased the complexity of this already difficult case, but a trial court's chief concern must be to allow the jury to hear all evidence relevant to the issue being decided and to exclude only that evidence which is inadmissible, as a matter of law, or which is unduly prejudicial." **Id.**

If this were true, a trial court could **never** exclude technically relevant evidence that would likely confuse the jury or produce a trial within the trial. This is not the law.

As this Court more recently held, "admissibility or exclusion of evidence are subject to the abuse-of-discretion standard of review." **Rohe v. Vinson**, 158 A.3d 88, 95 (Pa. Super. 2016), *appeal denied*, 176 A.3d 851 (Pa. 2017). Additionally, the Supreme Court of Pennsylvania has explained, "An appellate court cannot find an abuse of discretion merely for an error of judgment, unless, in reaching a conclusion, the trial court overrides or misapplies the law; or its judgment is manifestly unreasonable; or the evidence of record shows that the court's judgment exercised is manifestly unreasonable or lacking in reason." **Commonwealth v. Baker**, 766 A.2d 328, 331 (Pa. 2001). Thus, the *de novo* review which the **Cohen** Court performed cannot be

squared with the more recent pronouncements of the Supreme Court and its directives that we defer to a trial court's evidentiary determinations.

Also, in the 32 years since **Cohen**, no appellate-court majority has cited to it for the proposition upon which the Hutchinsons now rely. Hence, the notion that a trial court commits a *de facto* abuse of discretion by excluding evidence that this Court deems to be relevant is not firmly rooted in our precedents. The only opinion to rely on **Cohen** for that proposition is a dissent from the Commonwealth Court. **See Commonwealth v. Simpson**, 2287 C.D. 2009, 2010 WL 9516187 at *3 (Pa. Cmwlth. 2010) (unpublished), *reargument denied*, 4 A.3d 828 (2010), *appeal denied*, 23 A.3d 543 (Pa. 2011) (Cohn Jubelirer, J. dissenting; advocating for reversal of a trial court's relevancy ruling in a criminal matter to grant defendant a new trial). That dissent's reliance on **Cohen** is not particularly compelling, nor does it persuade us that the exclusion-of-relevant-evidence statement from **Cohen** survived the adoption of the Pennsylvania Rules of Evidence.

We hold that the adoption of the Pennsylvania Rules of Evidence in May of 1998, seven years after **Cohen**, abrogated the statement that "the unjustified exclusion of relevant evidence, otherwise admissible, is an abuse of discretion." **Cohen**, 592 A.2d at 725. Under the Rules of Evidence, courts of common pleas enjoy broad discretion to determine whether evidence is relevant and whether its admission outweighs the risk of confusing the jury. **See** Pa.R.E. 401 and Pa.R.E. 403 (stating, "The court may exclude relevant evidence if its probative value is outweighed by a danger of one or more of

- 10 -

the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.") Merely because an appellate court might have deemed evidence to be relevant in the first instance does not mean that a trial court abused its discretion by failing to admit that evidence.

As such, the Hutchinsons' reliance upon **Cohen** for their standard of review is misplaced.[1] Based on that reliance, they make a *de novo* argument, which is simply untenable under our abuse-of-discretion standard of review.

Abuse of discretion takes one of three forms. It "occurs if [(1) the trial court] committed an error of law; [(2) the court] exercised its judgment in a manifestly unreasonable manner; or [(3) the court's] decision was the result of partiality, prejudice, bias or ill-will, as shown by evidence on the record." **Womer v. Hilliker**, 908 A.2d 269, 273 (Pa. 2006).

Rather than explaining which type of abuse occurred, the Hutchinsons argue why they believe the trial court should have denied the hospital's motion *in limine*, as if our standard of review were *de novo*. They contend Ms. Page's testimony "was relevant." Hutchinsons' Brief at 26, 27. They then assert that

_____

[1] The trial court also quoted **Cohen v. Albert Einstein Medical Center**, 592 A.2d 720 (Pa. Super. 1991), in its Rule 1925(a) Opinion for the appellate standard of review. **See** Trial Court Opinion, 11/1/22, at 6. The trial court's reliance was equally misplaced for all of the above reasons. More importantly, a trial court's interpretation of the appellate standard of review is not binding upon the appellate court. **See, e.g.**, **In re Wilson**, 879 A.2d 199 (Pa. Super. 2005), *abrogated on other grounds by* **In re Ajaj**, 288 A.3d 94 (Pa. 2023). In **Wilson**, we stated this Court reviews the applicable standard of review *de novo*.

the trial court "should have" allowed her to testify and argue that the adverse ruling was "an error of law." *Id.* at 26, 29. The Hutchinsons further claim that, if a trial court rules evidence is irrelevant, but the appellate court deems that evidence to be relevant, the trial court's ruling is *per se* an abuse of discretion. In essence, the Hutchinsons invite us to substitute our relevancy judgment for that of the trial court, rather than defer to that court's relevancy ruling.

Even if we agreed with the Hutchinsons that the trial court "erred" when it made its relevancy ruling, Pennsylvania courts have long held that an "abuse of discretion is not merely an error of judgment, but rather a misapplication of the law or an **unreasonable** exercise of judgment." **Johnson v. Johnson**, 222 A.3d 787, 789 (Pa. Super. 2019) (emphasis added). The Hutchinsons do not explain how the trial court's judgment was unreasonable.

Moreover, when claiming an abuse of discretion, it is insufficient to convince us that "the lower tribunal reached a decision contrary to the decision that the appellate court would have reached." **B.B. v. Dep't of Pub. Welfare**, 118 A.3d 482, 485 (Pa. Cmwlth. 2015) (some punctuation omitted). Instead, an appellant must demonstrate one of the three abuses described above. **See Womer**, **supra**. Again, the Hutchinsons do not identify which types of abuse of the trial court supposedly committed, nor do they develop any argument based on those recognized forms of abuse.

As a result, they simply reargue the alleged relevancy of Ms. Page's testimony *de novo* to this Court. Accordingly, the Hutchinsons have failed to

establish an abuse of discretion within the trial court's discretionary judgments that:

> no evidence exists that anyone altered the record that helped the [Eye Clinic] or to divert the [Hutchinsons'] attention to something that would damage the Plaintiff or to – yeah, to bolster the [Hutchinsons'] case or to hurt the [Eye Clinic]. This whole issue on the audit trail at this point I find is irrelevant and is only going to cause confusion to the jury.
>
> Further, after reading Jessica Page's -- all three reports -- but particularly the last one, she goes way beyond her expertise in handwriting and standard of care and what she does in her practice, which she is really not -- she is not qualified to do.

N.T., 8/12/21, at 161-62.

In sum, the Hutchinsons have not argued – much less persuaded this Court – that an abuse of discretion occurred. We therefore dismiss their three appellate issues as meritless.

Judgment affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

11/8/2023

- 13 -