J-A27021-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ESTATE OF KATHY A. MACRAE, DECEASED | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: ALISON COVERT | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 549 MDA 2023 |

Appeal from the Order Entered March 9, 2023
In the Court of Common Pleas of Berks County Orphans' Court at No(s):
0620-1201

BEFORE:   LAZARUS, J., NICHOLS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY NICHOLS, J.:                    **FILED: APRIL 22, 2024**

Appellant Alison Covert appeals from the order denying her petition to show cause for a breach of a post-nuptial agreement and compel an estate accounting for the estate of Kathy A. MacRae (Wife).  On appeal, Appellant challenges the orphans' court's conclusions concerning the authenticity of an alleged agreement.  We affirm.

The underlying facts of this matter are well known to the parties.  **See** Orphans' Ct. Op., 5/12/23, at 5-12.  Briefly, Harold Johnson, Esq., (Attorney Johnson) prepared wills for Wife and Duncan MacRae, Sr. (Husband) in 2006.  Wife's will provided that her estate would go to Husband but that, if Husband predeceased Wife, 60% of the estate would go to the parties' children

_____

[*] Former Justice specially assigned to the Superior Court.

(Appellant, Duncan MacRae, Jr., (Mr. MacRae, Jr.), and Timothy MacRae),[1] with the remaining 20% to Wife's mother and Linda Friedrich (Appellee), Wife's sister. Likewise, Husband's will provided that his estate would go to Wife, but if Wife predeceased him, his estate would be distributed to the parties' children. Both wills were executed in the State of New York, where the parties resided. Following Husband's death in 2014, Attorney Johnson subsequently prepared a new will for Wife which provided that her estate, minus some personal effects, would go to Appellee.

After Wife died in 2020, the orphans' court explained:

[Appellee] placed a telephone call to [Appellant], to inform her of [Wife's] death. During the telephone conversation with [Appellee], upon learning of the death of [Wife, Appellant] asked [Appellee] what [Appellant] could anticipate receiving from [Wife's] estate. In response to the question asked by [Appellant] as to what she could expect to receive from [Wife's] estate, [Appellee] told [Appellant] she did not anticipate [Appellant] would receive anything from [Wife's] estate. Upon being told she would not be receiving anything from [Wife's] estate, [Appellant] got very angry with [Appellee].

In addition to placing a telephone call to [Appellant], [Appellee] also placed a telephone call to [Mr. MacRae, Jr., Husband's] son, to inform him of [Wife's] death. During the telephone conversation with [Appellee], upon learning of the death of [Wife, Mr. MacRae, Jr.] asked [Appellee] what he could anticipate receiving from [Wife's] estate. In response to the question asked by [Mr. MacRae, Jr.] as to what he could expect to receive from [Wife's] estate, [Appellee] told [Mr. MacRae, Jr.] she did not anticipate [he] would receive anything from [Wife's] estate.

Two (2) days after the death of [Wife] and the telephone conversation with [Appellee], [Appellant] contacted Attorney

---

[1] The record reflects that the children were Husband's biological children and Wife's stepchildren.

Johnson informing him that she possessed a document allegedly signed by [Husband] and [Wife] in which they agreed not to change their wills. The document produced by [Appellant] entitled "Agreement Contract" appears to be a photocopy and appears to contain the signature of Allan Greenstein, notarizing the document.

[Appellant] subsequently went to see Attorney Johnson and showed him the agreement contract. Upon review of the agreement contract, Attorney Johnson knew he had never seen it before, he had not prepared it, and he knew nothing about it. Further, he felt it did not look as if it was prepared by a lawyer. On November 2, 2022, Attorney Johnson sent an email to counsel for the parties in which he said, "[P]lease note that the 'Agreement Contract' dated January 22, 2007 was NOT prepared by me and was not in my files — I only learned of it when [Appellant] visited me on August 24, 2020. It appears to be a forgery (cut and paste of notary and signatures)."

[Appellant] did not, and does not currently, possess an original of the alleged agreement contract. Further, she never saw an original of the agreement contract. She contends she was given a copy of the agreement contract by [Husband].

Additionally, [Mr.] MacRae, Jr. did not, and does not currently, possess an original of the alleged agreement contract. He also never saw an original of the agreement contract. [Mr. MacRae, Jr.] contends he was given a copy of the agreement contract by [Husband], but says he no longer possesses the document allegedly given to him by [Husband] in that it was lost or destroyed.

Orphans' Ct. Op., 5/12/23, at 9-12 (formatting altered).

In March of 2022, Appellant filed a petition to show cause for breach of a post-nuptial agreement and to compel an estate accounting. Therein, Appellant raised three claims, including breach of post-nuptial agreement, breach of covenant of good faith and fair dealing constructive trust, and accounting of administration by executrix. In support, Appellant argued that Wife and Husband had signed an agreement contract in 2007 which stated

- 3 -

that neither party would alter the terms of their will in the event of the other party's death.

In light of the dispute concerning the existence of the agreement contract, the orphans' court scheduled a bifurcated hearing. At the first hearing, the parties were to present evidence as to "whether the agreement contract identified in the petition is authentic and binding on the parties, the scope of the agreement contract, and whether there was a breach." *Id.* at 2. Ultimately, the orphans' court concluded that Appellant had failed to demonstrate that there was an agreement contract and issued an order denying Appellant's petition to show cause for breach of a post-nuptial agreement and compel an estate account. *See* Orphans' Ct. Order, 3/9/23.

Appellant filed a timely notice of appeal and both Appellant and the orphans' court complied with the mandates of Pa.R.A.P. 1925.

Appellant raises the following issues for our review:

1. Did the [orphans' court] err by misapplying the Best Evidence Rule set forth at Pa.R.E. 1003 [and] 1004 by disregarding the photocopy of the contract to will [(agreement contract)] offered by Appellant because, as a third-party beneficiary, she was not required to offer the original, which was either lost or in possession of the opposing party?

2. Did the [orphans' court] err as a matter of law by failing to impose the burden of proof upon [Appellee] to prove the copy offered of the contract to will was a forgery, and because she presented no evidence of forgery, she failed to meet her burden?

3. Did the [orphans' court] err as a matter of law by misapplying New York law regarding the standard of proof applicable in proving a contract to will by imposing a clear and unambiguous standard although the document in question, on its face, was

clearly a contract entered into by a husband and wife to restrict their rights to amend their mutual wills?

4. Did the [orphans' court] err as a matter of law or abuse its discretion by failing to properly apply New York law that all contracts to will have an implied duty of good faith, which, as here, is breached when one of the contracting parties dilutes their estates by transferring assets from it so that the purpose of the contract is defeated?

Appellant's Brief at 4.[2]

## Best Evidence Rule

Appellant's first issue relates to the orphans' court's application of the best evidence rule. Appellant's Brief at 15-21. Specifically, Appellant argues that the orphans' court erred when it applied the best evidence rule and concluded that "a copy of the agreement offered into evidence was not sufficient to establish the agreement existed for want of an original." *Id.* at 17-18, 21 (some formatting altered).

We review an orphans' court's evidentiary rulings for an abuse of discretion. *In re Estate of Boardman*, 80 A.3d 820, 822 (Pa. Super. 2013);

_____

[2] We note that Mr. MacRae, Jr. filed a *pro se* brief with this Court. Because Mr. MacRae, Jr. is not a party to the instant appeal, we shall treat his brief as an *amicus curiae* brief, which is governed by Rule 531 of the Pennsylvania Rules of Appellate Procedure. Mr. MacRae, Jr.'s *amicus* brief does not address the issues raised by Appellant. *See Amicus* Brief at 13-20. Instead, the *amicus* brief raises issues that were not raised by Appellant; therefore, those issues are not properly before this Court, and we cannot consider them. *See In re Scheidmantel*, 868 A.2d 464, 478 (Pa. Super. 2005) (stating that "[a]n *amicus curiae* is not a party and cannot raise issues which have not been preserved and raised by the parties themselves" (citation omitted)); *see also* Pa.R.A.P. 531(a). Moreover, Mr. MacRae, Jr.'s *amicus* brief was not timely filed, as it was due on or before the date of filing for Appellant's brief. Pa.R.A.P. 531(b)(4).

*see also Hutchinson v. Verstraeten*, 304 A.3d 1268, 1274 (Pa. Super. 2023) (defining abuse of discretion).

Rule 1002 of the Pennsylvania Rules of Evidence states that "[a]n original writing . . . is required in order to prove its content unless these rules, other rules prescribed by the Supreme Court [of Pennsylvania], or a statute provides otherwise." Pa.R.E. 1002. The comment to Rule 1002 states that the best evidence rule "inhibits fraud because it allows the parties to examine the original documents to detect alterations and erroneous testimony about the contents of the document[,]" and "[t]he appearance of the original may furnish information as to its authenticity." Pa.R.E. 1002 cmt. (citation omitted). "A duplicate is admissible to the same extent as the original **unless a genuine question is raised about the original's authenticity** or the circumstances make it unfair to admit the duplicate." Pa.R.E. 1003 (emphasis added).

In the instant case, the record reflects that the orphans' court "conditionally" admitted the agreement contract into evidence during the evidentiary hearing, but noted that there remained "a genuine question as to the authenticity of the original." *See* N.T. Hr'g, 2/21/23, at 67-68.

Thereafter, the orphans' court issued an order which stated:

Although Rule 1003 of the Pennsylvania Rules of Evidence provides a duplicate is admissible to the same extent as an original, it is permitted if there is not a genuine question raised about the original's authenticity or circumstances that would make it unfair to admit the duplicate. Pa.R.E. 1003. In this case, the [orphans' court] finds serious questions have been raised about the authenticity of the original, if any. Further, the [orphans'

court] finds the comment to Rule 1002 of the Pennsylvania Rules of Evidence very persuasive in that an original will help determine whether there is fraud and address authenticity. Therefore, in the absence of an original, the [orphans' court] will give the duplicate no weight.

Orphans' Ct. Op., 3/9/23, at 14.

In its Rule 1925(a) opinion, the orphans' court explained that it did not treat the agreement contract "as an admissibility issue" and instead "dealt with it as an issue of weight." **See** Orphans' Ct. Op., 5/12/23, at 19.

With respect to the authenticity of the agreement, the orphans' court explained:

> [Appellant] contends (i) when the agreement contract was presented to Attorney Johnson, he acknowledged he was aware of its existence; (ii) he admitted he made a mistake by allowing [Wife] to change her will; and (iii) Attorney Johnson later lied under oath for the purposes of concealing his own wrongdoing.
>
> On the other hand, Attorney Johnson provides a less complex explanation. Attorney Johnson testified that he did not prepare the agreement contract and was unaware of its existence. Attorney Johnson further opined that the agreement contract may be fraudulent.
>
> A review of the uncontradicted documentary evidence that was prepared prior to anybody to have a motive to be dishonest, supports the conclusion that Attorney Johnson was telling the truth. Specifically, Attorney Johnson's handwritten notes from his September 18, 2006 meeting with [Husband] and [Wife], the letter of October 12, 2006, the statement of services rendered dated January 23, 2007[,] and the transmittal letter dated January 23, 2007 are all silent regarding an agreement contract. This leads the [orphans' court] to find Attorney Johnson's testimony that he did not prepare the agreement contract and he was unaware of its alleged existence was credible. It also leads the [orphans' court] to find [Appellant's] testimony . . . of Attorney Johnson's alleged admissions to the contrary not credible.

The [orphans' court] finds the simple explanation presented by Attorney Johnson is more plausible and credible than the more complex explanation presented by [Appellant]. Therefore, the [orphans' court] is accepting the testimony of Attorney Johnson as credible and is rejecting the testimony of [Appellant] because it is not credible.

Having found Attorney Johnson's description of the meeting with [Appellant] to be credible and supported by related documentary evidence, leads to the inescapable conclusion that [Appellant's] description was false. Regardless of whether [Appellant's] inaccurate description of the interchange was a mere failure of memory or an intentional falsehood, it seriously taints the balance of her testimony.

A further issue that weighs heavily against [Appellant] is her failure to produce Allan Greenstein as a witness. If the agreement contract is authentic, it appears on its face to have been notarized by the same person who notarized [Wife's] will and [Husband's] will on the same day. If the agreement contract is authentic and valid, the one disinterested party in the best position to establish its authenticity is Allan Greenstein. The failure to produce Mr. Greenstein, without explanation, weakens [Appellant's] case.

In addition to the foregoing, the [orphans' court] finds Attorney Johnson's opinion that the agreement contract was not prepared by a lawyer to be compelling. The [orphans' court] compared the wills that Attorney Johnson admitted preparing with the agreement contract that he denies preparing. In the opinion of the [orphans' court], the wills and the agreement contract were not prepared by the same person. Whereas the wills appear to have been drafted by a person with legal training and expertise, the agreement contract appears to have been [inartfully] taken from a form book. The [orphans' court] is unable to find the wills prepared by Attorney Johnson and the agreement contract were drafted by the same person, signed on the same day, and notarized by the same person. This strongly supports the conclusion that the wills were authentic and the agreement contract is not.

\* \* \*

In this case, the [orphans' court] finds it would naturally be in the interest of [Husband] to produce the original of the agreement contract, to the extent it existed, to his daughter, [Appellant]. Further, to the extent it existed, it would be in the interest of

- 8 -

[Appellant] to produce. The [orphans' court] does not find the explanation for its non-production to be satisfactory. The [orphans' court] is not going to find an adverse inference that the original would be unfavorable, but does find its lack of production weighs against the credibility of [Appellant] and her brother, [Mr.] MacRae, Jr.

*   *   *

In sum, having fully weighed and considered all of the evidence presented, the [orphans' court] finds the credible evidence presented does not support the conclusion that [Wife] agreed to renunciate her right to alter, modify or revoke her will signed on January 22, 2007.

Orphans' Ct. Op., 3/9/23, at 11-13, 15 (footnote omitted and some formatting altered).

Following our review of the record, we discern no abuse of discretion by the orphans' court. **See Boardman**, 80 A.3d at 822. Although the orphans' court conditionally admitted the copy of the agreement contract, the orphans' court ultimately determined that there were serious questions about the authenticity of the original, if one existed, and declined to give the duplicate any weight. **See** Orphans' Ct. Op., 3/9/23, at 11-15; Orphans' Ct. Op., 5/12/23, at 19. We will not re-weigh the orphans' court's conclusions on appeal. **See In re Estate of Warden**, 2 A.3d 565, 575 n.3 (Pa. Super. 2010). Further, we discern no error by the orphans' court in concluding that an original was necessary under the circumstances of this case. **See** Pa.R.E. 1002; 1003. Accordingly, Appellant is not entitled to relief.

**Burden of Proof**

Appellant also argues that the orphans' court erred as a matter of law by failing to require Appellee to prove that the copy of the agreement contract was a forgery and contends that "because Appellee presented no evidence of forgery, she failed to meet her burden." Appellant's Brief at 21.

In response, Appellee argues that the orphans' court did not find that the agreement contract was a fraud or forgery and that, even if the orphans' court had impliedly reached that conclusion, there is no claim against Appellant for fraud or forgery. Appellee's Brief at 24. Therefore, Appellee contends that it was Appellant's burden to prove the existence of the agreement contract by clear and convincing evidence, which Appellant failed to do. *Id.* at 24-25.

In reviewing an orphans' court's order, our standard of review is as follows:

> this Court must determine whether the record is free from legal error and the court's factual findings are supported by the evidence. Because the Orphans' Court sits as the fact-finder, it determines the credibility of the witnesses, and on review, we will not reverse its credibility determinations absent an abuse of that discretion.

*In re Estate of Presutti*, 783 A.2d 803, 805 (Pa. Super. 2001) (citation omitted).

"When the issue of a forgery is raised, the claimant or contestant of the will has the burden of proving the existence of a forgery by clear and convincing evidence." *Id.* at 806 (citations omitted); *see also De Lage*

- 10 -

*Landen Servs., Inc. v. Urban Partnership, LLC*, 903 A.2d 586, 590 (Pa. Super. 2006) (applying clear and convincing burden of proof to parties alleging forgery in other civil cases). Additionally, this Court has stated that "because forgery presents an issue of fact, the resolution of the issue necessarily turns on the court's assessment of the witnesses' credibility." *Presutti*, 783 A.2d at 806 (citation omitted).

Here, the orphans' court reached the following conclusion with respect to the existence of an agreement contract:

> The issue in dispute in this case is whether [Wife] surrendered her right to change her will. The affirmative, *i.e.*, that she did enter into an agreement not to change her will, must be proven by the party alleging she did enter such an agreement. Therefore, the burden to prove [Wife] entered such an agreement was on [] Appellant.
>
> It would be counterintuitive to require that, unless [] Appellee proves [Wife] never agreed not to change her will, then the [orphans' court] must find she did agree to change her will. Making such a finding would result in a very personal right of a testator being stripped away in favor of a presumption they had given it up. Finding [] Appellant's argument on [this] issue to be wholly lacking in merit, it cannot be relied upon to afford her relief.

Orphans' Ct. Op., 5/12/23, at 25.

Based on our review of the record, we discern no abuse of discretion or error of law by the orphans' court. *See Boardman*, 80 A.3d at 822. Appellee did not dispute the validity of Wife's will or argue that it was a forgery. Indeed, it was Appellant who took issue with the contents of Wife's will and attempted to prove that a separate writing evidenced the parties' agreement not to revoke their previous wills. Therefore, we agree with the orphans'

court's conclusion that Appellee was not required to prove that the copy of the agreement contract was a forgery. Accordingly, Appellant is not entitled to relief on this claim.

**Applicability of New York Law**

Appellant next contends that the orphans' court misapplied New York law "regarding the standard of proof applicable in proving a contract to will by imposing a clear and unambiguous standard through the document in question, on its face, was clearly a contract entered into by a husband and wife to restrict their rights to revoke their mutual wills." Appellant's Brief at 25. Specifically, Appellant contends that the orphans' court improperly "tasked [Appellant] with proving by 'clear and convincing evidence' that [Wife] 'actually made' such an agreement." *Id.* at 27 (some formatting altered). Appellant further argues that New York law does not require that the existence or authenticity of a contract to will be established by clear and convincing evidence. *Id.* Rather, "the 'clear and convincing' standard is a question of interpretation—that is, whether the language employed clearly shows the intent to give up the right to make a new will." *Id.*

"In contract disputes, Pennsylvania courts generally honor the parties' choice of law provisions." *Nationwide Mut. Ins. Co. v. West*, 807 A.2d 916, 920 (Pa. Super. 2002) (citation omitted). In the instant case, the record reflects that Husband and Wife executed their wills in New York, were residents of New York at the time that they executed their wills, and there is no dispute that they were residents of New York at the time the agreement

contract was allegedly executed. *See* Orphans' Ct. Op., 5/12/23, at 16. Accordingly, substantive New York law would apply. *Nationwide Mut. Ins. Co.*, 807 A.2d at 920.

However, as noted by the orphans' court, there is no dispute that, on its face, the alleged agreement contract "was clearly a contract entered into by a husband and wife to restrict their rights to amend their mutual wills." Orphans' Ct. Op., 5/12/23, at 14. While the substantive law concerning the contents of the agreement contract would be governed by the laws of the State of New York, the procedural law is governed by the laws of the Commonwealth of Pennsylvania, and the evidentiary law of Pennsylvania controls. *See Greenwood v. Hildebrand*, 515 A.2d 963, 967 (Pa. Super. 1986) (citing Restatement (Second) of Conflict of Laws § 138 (1971); 16 Am. Jur. 2d *Conflict of Laws* § 131 (1979)); *see also Commonwealth v. Dennis*, 618 A.2d 972, 980 (Pa. Super. 1992) (stating that the "law of evidence, including the admissibility of specifically offered evidence, has traditionally been characterized as procedural law" (citing, *inter alia*, Leflar, *American Conflicts Law*, 4th Ed., § 116 (1977))).

Pennsylvania Rule of Evidence 901 provides in relevant part that, "to satisfy the requirement of authenticating . . . an item of evidence, the **proponent** must produce evidence sufficient to support a finding that the

item is what the proponent claims it is." Pa.R.E. 901(a) (emphasis added).[3]

An *en banc* panel of this Court explained:

> A document may be authenticated by direct proof and/or by circumstantial evidence. Proof of any circumstances which will support a finding that the writing is genuine will suffice to authenticate the writing.
>
> Where there is a question as to any writing, the opinion of any person acquainted with the handwriting of the supposed writer is relevant for that purpose. Rule 901(b) provides that "[a] non[-]expert's opinion that handwriting is genuine, based on a familiarity with it that was not acquired for the current litigation," is competent evidence.
>
> In addition, circumstantial evidence may be sufficient to authenticate a document.
>
> A proponent of a document need only present a *prima facie* case of some evidence of genuineness in order to put the issue of authenticity before the factfinder. The trial court makes the preliminary determination of whether or not a *prima facie* case exists to warrant its submission to the finder of fact. If that threshold is met, the [factfinder] considers the evidence and weighs it against that offered by the opposing party.

**Gregury v. Greguras**, 196 A.3d 619, 633-34 (Pa. Super. 2018) (*en banc*)

(citations omitted and some formatting altered).

The record reflects that Appellant, as the proponent of the agreement

contract, provided *prima facie* evidence as to its genuineness through both

---

[3] We also note that even if New York's evidentiary law were to apply to the instant case, New York case law holds that, "[a] private document offered to prove the existence of a valid contract cannot be admitted into evidence unless its authenticity and genuineness are first properly established." **Young v. Crescent Coffee, Inc.**, 201 N.Y.S.3d 169, 172 (N.Y. App. Div. 2023) (citation omitted); **see also** Guide to N.Y. Evid rule 9.01(1), Authenticating or Identifying Evidence; In General.

J-A27021-23

Appellant's own testimony and that of her brother, Mr. MacRae, Jr., that Husband provided each of them with a copy of the agreement contract. Accordingly, Appellant's submission of the agreement contract to the orphans' court and the orphans' court's conditional admission of the document into evidence consistent with Rule 104(b) of the Pennsylvania Rules of Evidence, and without objection of counsel, met the threshold for the orphans' court as factfinder to consider the authenticity of the document and its weight. The orphans' court within its discretion determined to give the proffered agreement no weight. *See Gregury*, 196 A.3d at 633-34; Pa.R.E. 104(b); *see also* N.T. Hr'g, 2/21/23, at 14, 18, 39. It is axiomatic that the fact finder has the sole province of weighing the evidence and determining the credibility of all witnesses. *See Gregury*, 196 A.3d at 633-34; *see also Ferraro v. Temple Univ.*, 185 A.3d 396, 404 (Pa. Super. 2018).

Instantly, on this record, the orphans' court acted properly within its discretion in concluding that the testimony of Mr. MacRae, Jr. and Appellant was not credible. *See Hutchinson*, 304 A.3d at 1274. As factfinder, credibility and weight of evidence determinations are exclusively within the province of the orphans' court and we cannot substitute our judgment in that its findings are supported by the record and within its discretion. *See Ferraro*, 185 A.3d at 404; *see also Dubose v. Quinlan*, 125 A.3d 1231, 1238 (Pa. Super. 2015) (stating that "[t]his Court will not substitute its judgment based upon a cold record for that of the factfinder where issues of

- 15 -

credibility and weight are concerned" (citations omitted and formatting altered)). Accordingly, Appellant is not entitled to relief.

**Duty of Good Faith**

In her final issue, Appellant alleges that the orphans' court erred when it failed to "properly apply New York law that all contracts to will have an implied duty of good faith, which as here, is breached when one of the contracting parties dilutes their estate by transferring assets from it so that the purpose of the contract is defeated." Appellant's Brief at 28. Specifically, Appellant argues that Wife breached the contract at issue when she executed her March 5, 2014 will. *Id.* at 29. Appellant also alleges that Wife changed the beneficiary designations on various accounts with Prudential and Wells Fargo. *Id.* at 30. Further, Appellant argues that in return for Husband contributing a majority of the marital assets, Wife agreed to leave sixty percent of her estate to Husband's biological children. *Id.* at 31. "[Wife's] diversion of those assets after [Husband's] death denied [Husband, Appellant, Mr. MacRae, Jr.], and Timothy the benefits of that bargain." *Id.* Appellant concludes that, "[t]o remedy this breach, the [orphans'] court should have invalidated [the] January 18, 2014 beneficiary designations, and any other beneficiary designations made for those accounts after January 22, 2007, reinstate the beneficiary designations to [Wife's] estate, effective as of January 22, 2007." *Id.* at 31-32.

The orphans' court reached the following conclusion:

> Although it is clear all contracts, if entered, impose a duty of good faith and fair dealing, the [orphans' court] cannot impose that duty if the court does not find the existence of a contract. In this case, the [orphans' court] did not find [Wife] entered into an agreement surrendering the power to change her will. In the absence of such an agreement, the duty of good faith and fair dealing is immaterial to the decision in this case.

Orphans' Ct. Op., 5/12/23, at 26.

On this record, the orphans' court did not abuse its discretion or err as a matter of law in rejecting Appellant's claim concerning the existence of the agreement contract. Therefore, we agree with the orphans' court that "the duty of good faith and fair dealing is immaterial to the decision in this case." *See id.* Therefore, Appellant is not entitled to relief. *See Hutchinson*, 304 A.3d at 1274; *Ferraro*, 185 A.3d at 404; *In re Estate of Schumacher*, 133 A.3d 45, 49-50 (Pa. Super. 2016). For these reasons, we affirm.

Order affirmed. Jurisdiction relinquished.

Judgment Entered.

_____
Benjamin D. Kohler, Esq.
Prothonotary

Date: 4/22/2024

- 17 -